IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LICIA A. MOODY,
      Plaintiff,

vs.                                                  Case No: 3:07cv410/RS/MD

ROBERT M. GATES,
SECRETARY, DEPARTMENT OF DEFENSE,
      Defendant.

## REPORT AND RECOMMENDATION

This cause filed pursuant to Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e to 2000e-17, is before the court upon defendant's motion to dismiss for lack of jurisdiction and for plaintiff's failure to state a claim upon which relief can be granted. (Doc. 19). The plaintiff, proceeding *pro se,* has responded in opposition to the motion. (Doc. 20). Upon review of the submissions of the parties, it is the opinion of the undersigned that this case should be dismissed for lack of subject matter jurisdiction.

### BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, a former employee of the Department of Defense (hereinafter "Agency") at the Defense Finance and Accounting Service's ("DFAS") Pensacola site, filed this action under Title VII alleging unlawful employment discrimination. Currently before the court is defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The record reflects the following undisputed facts. On April 22, 2002 the Washington Headquarters Services Consolidated Adjudications Facility ("WHS

CAF") found plaintiff eligible to occupy a sensitive position. (Doc. 1, p. 37). On October 1, 2004 while plaintiff was employed at DFAS as an Accounting Systems Administrator, GS-501-11, she was notified of the WHS CAF's intention to revoke her eligibility to occupy a sensitive position due to security concerns which had raised questions about her trustworthiness, reliability and judgment. (Doc. 1, pp. 24-38; Doc. 19, Ex. 2). Plaintiff submitted a response on October 29, 2004. (Doc. 1, p. 51). On April 29, 2005, WHS CAF issued a Letter of Revocation of Eligibility for Access to Classified Information and/or Occupancy of a Sensitive Position. (Doc. 1, pp. 40-45; Doc. 19, Ex. 3). Plaintiff appealed the revocation. (Doc. 1, p. 46; Doc. 19, Ex. 3). On March 31, 2006 an administrative judge recommended that the WHS Clearance Appeals Board overturn the revocation. (Doc. 1, pp. 50-58). On June 6, 2006 the WHS Clearance Review Board reviewed the appeal and, in a memorandum dated June 26, 2006, sustained the determination that plaintiff was ineligible for a sensitive position. (Doc. 19, Ex. 4). While that process was pending, on January 25, 2005 plaintiff's position (Accounting Systems Administrator, GS-501-11) was designated as a "Critical-Sensitive" position. (Doc. 1, pp. 21-23).

Without the security clearance, plaintiff could no longer meet the requirements of her position, so the Agency suspended her from duty without pay effective May 27, 2006. (Doc. 19, Ex. 1). On July 20, 2006 the Agency provided plaintiff with a 30-day notice of its intent to remove her from her position and from Federal employment. (*Id.*, Ex. 5). On July 22, 2006 plaintiff responded to the proposed removal by noting that while the DAS Form 113 (the official Position Sensitivity Designation Record) designated her position as "Critical-Sensitive," the position description attached to the form indicated that the duties of the position were "Noncritical-Sensitive." (Doc. 19, Ex. 6; *see also* Doc. 1, pp. 21-23). Plaintiff also challenged the propriety of the determination that her position requires the handling of sensitive information and alleged that she should have been afforded the opportunity to contest the security designation of her position. (Doc. 19, Ex. 6). By letter dated August 21, 2006 the Agency officially notified plaintiff of its decision to

remove her from her position and from Federal employment due to the revocation of her eligibility to occupy a sensitive position. (*Id.*, Ex. 7). In its notice, the Agency advised plaintiff that the DAS Form 113 is the official form designating a position's sensitivity; that the position plaintiff occupied was sensitive; that both "Critical-Sensitive" and "Noncritical-Sensitive" designations require access to sensitive information; that plaintiff's eligibility to occupy any sensitive position, whether critical or noncritical, had been revoked; that plaintiff had no legal right to have input into the sensitivity designation decision or to be forewarned of any changes to her position sensitivity or to address changes before they are made. (*Id.*).

On August 31, 2006 plaintiff filed a formal complaint of discrimination with the Agency's Equal Employment Opportunity office alleging discrimination based upon her race (black) when she "was not treated as other white system employees in their security investigations because they were not issued Position Sensitivity Designation record changes in the middle of their security clearance process." (Doc. 1, pp. 13-18; Doc. 19, Ex. 9). On September 28, 2006 the Agency issued a Final Agency Decision dismissing plaintiff's complaint as follows:

> The Commission has held that it has no authority to review a security clearance determination or the validity of an employer's requirement for a security clearance. The Commission is, however, not precluded from determining whether the grant, denial, or revocation of a security clearance was conducted in a non-discriminatory manner. The Commission has held that once information gathered during the investigation is included in the security clearance investigative report, the information is "squarely within the rubric of a security clearance determination and, accordingly, beyond the Commission's jurisdiction."
>
> Assertion that other employees of different protected groups were not subjected to the same level of scrutiny and did not have their security clearances revoked is not within the jurisdiction of the Commission because a decision would require review of the substance of the security clearance determination.
>
> Even should complainants be allowed to pursue their claims under the limitations imposed by cases cited above, no relief with

> respect to the denial of security clearances nor subsequent actions that flowed from that denial could be granted by the EEOC.
>
> . . . .
>
> Based on a thorough analysis of the evidence, we find that complainant has failed to establish any present direct, personal deprivation by the agency. Furthermore, the complainant's assertion that her denial of being reinstated to a position of trust based on security concerns is not a stated claim of relief within the purview of the EEOC.

(Doc. 19, Ex. 10) (citations to omitted). Plaintiff appealed the dismissal of her complaint to the EEOC Office of Federal Operations (OFO). The OFO affirmed the agency's dismissal of the complaint, as follows:

> In her complaint, complainant alleged that she was subjected to discrimination on the basis of race (African-American) when her position as Accounting Systems Administrator, GS-11, was reclassified from "non-critical" to "critical sensitive" without her knowledge or input, which resulted in the revocation of her eligibility to occupy the position due to an alleged history of not meeting her personal financial obligations.
>
> We affirm the agency's dismissal of the complaint as outside the purview of the EEO complaint process. The Commission has no authority to review a security clearance determination or the validity of an employer's requirement of a security clearance. However, under limited circumstances, the Commission will determine whether the grant, denial, or revocation of a security clearance was conducted in a discriminatory manner. In this case complainant is, in essence, challenging the designation of her position as one requiring a security clearance. In her statement submitted on appeal, however, she states that she is not "disputing the outcome of her security clearance investigation." Under these facts, the Commission finds it does not have jurisdiction to review the decision concerning the security level assigned a particular position. As such the agency's dismissal of the complaint is AFFIRMED.

(Doc. 19, Ex. 11) (citations omitted). Plaintiff's Request for Reconsideration was denied by the EEOC on June 26, 2007. (Doc. 19, Ex. 12). Plaintiff timely filed her complaint with this court on September 25, 2007. (Doc. 1).

## DISCUSSION

### Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).[1] "The district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* (quoting *Menchaca*, 613 F.2d at 511). In a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach and, where the elements of the underlying cause of action are not implicated, the court is free to weigh the evidence. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999); *Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).

In the instant case, the defendant's motion to dismiss does not rely on the language of the complaint but, rather, challenges the court's jurisdiction in fact. The issue of fact is whether evaluation of plaintiff's claims would require the court

---

[1] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit, all decisions of the former Fifth Circuit announced prior to October 1, 1981).

to investigate security clearance matters or the validity of a position's sensitivity designation (in this case, the Agency's requirement of a security clearance). Thus, because the underlying elements of plaintiff's claims are not implicated, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *See Scarfo*, 175 F.3d at 960.

**Analysis**

Defendant asserts that "[b]ecause the crux of this case is the revocation of the plaintiff's security clearance, the Court lacks subject matter jurisdiction." (Doc. 1, p. 4). This is not an accurate description of plaintiff's claim. Plaintiff is not challenging the security clearance background investigation or the revocation of her security clearance. Rather, she is challenging the reclassification of her position as Accounting Systems Administrator, GS-0501-11, from "non-critical" to "critical sensitive" without her knowledge or input, claiming that it was improperly motivated by discrimination and resulted in her removal from her position due to her ineligibility to occupy a sensitive position. Even in light of this construction, however, the undersigned concludes that plaintiff's challenge is not within the jurisdiction of the courts.

In her complaint, plaintiff asserts, "[t]he Agency's designation change of my position to Critical Sensitive towards the end of my security clearance investigation without my knowledge caused harm to a process already in motion based on a clearance for a non-critical position, which didn't allow me any recourse to appeal because my security clearance investigation was in the final stage." (Doc. 1, p. 7). She further contends that her position "as an Accounting System Administrator GS 501-11 (black) had been upgraded to a Critical Sensitive position sensitivity level when the other System Accountant GS 510-12 (white) positions were only upgraded to a Non Critical Sensitive position sensitivity level. And their sensitivity levels were not upgraded during the course of their security investigations." (*Id.*, p. 8).

In her response to defendant's motion to dismiss she states that the basis of her complaint is that she was discriminated against on the basis of race when "[her] position sensitivity designation was changed without [her] knowledge." (Doc. 20, p. 1).  She goes on to argue that the form which designated her position as "critical sensitive" was "prepared in error," and that "because I was discriminated against as a black when my position . . . sensitivity designation was changed on January 25, 2005 and I was not notified of this change and no other employee was discriminated [against] in this manner is the basis that I seek relief in my case because it affected the outcome of my security clearance process, which lead [sic] to the termination of my employment."  (*Id.*, p. 2).  She asserts that she is "not requesting the court to review the security clearance decisions but I am asking the court to make a determination if the Department of Defense was in error when it changed the position sensitivity designation without notifying the Plaintiff and that the position sensitivity designation change is error because the information on the form does not conform with the position designation descriptive narration."  (*Id.*).

The United States Supreme Court's holding in *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) and the Eleventh Circuit's in *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003), preclude judicial review of security clearance decisions made by the Executive or his delegee.  In *Egan*, the Court explained that security clearance decisions are made pursuant to constitutional authority vested in the Executive Branch.  *Id.,* at 527, 108 S.Ct. 818.  The decision whether to grant security clearance involves a "sensitive and inherently discretionary judgment call . . . committed by law to the appropriate agency of the Executive Branch."  *Id.*  Because a decision to grant or revoke a clearance is based on a prediction of an individual's potential to compromise sensitive information, it is "not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence."  *Id.*, at 529.  Thus,

because of the executive's constitutional supremacy and expertise in this area and outside authorities' lack of competence to evaluate these decisions, neither agencies nor courts have authority to review the merits of the denial of a security clearance absent clear congressional authorization. *Id.,* at 529-30 (holding that Merit Systems Protection Board has no statutory authority to review the Navy's substantive decision to revoke a civilian employee's security clearance). In *Hill*, the Eleventh Circuit held that the rule applied in *Egan*–that security clearance decisions are the province of the Executive Branch--applies equally in the context of a Title VII discrimination action, barring judicial review of the United States Army's initiation of a security clearance investigation. *Id.,* at 1335-36 (holding that court lacked jurisdiction to review civilian employee's claim that the Army's initiation of a security clearance investigation was motivated by age discrimination).

The plaintiff in this case is not challenging the revocation of her security clearance; rather, she is challenging the Agency's decision to designate her position as "Critical-Sensitive" requiring such a clearance. However, the Agency's designation of the position's sensitivity level was taken pursuant to its unique executive authority. Only the Department of Defense is fully informed about why certain positions are sensitive and others are not. Determining whether there was an improper motive behind the challenged action would require this court to examine the merits of the classification decision. Such an inquiry by this court would infringe upon defendant's discretionary authority to withhold sensitive information from unauthorized persons by classifying those positions. Because *Egan* held that such scrutiny is an impermissible intrusion by a nonexpert body into the authority of the Executive Branch over matters of national security, plaintiff's claim of discriminatory re-classification of her position's sensitivity designation is unreviewable. *See Skees v. Dep't of Navy*, 864 F.2d 1576, 1577-78 (Fed. Cir. 1989) (holding that Merit Systems Protection Board has no authority to review Navy's

classification of position as one requiring a security clearance);[2] *Mattingly v. Dep't of Navy*, 36 Fed. Appx. 428, 429 (Fed. Cir. 2002) (holding that neither the Merit Systems Protection Board nor a federal court has the authority to review the Navy's judgment that a particular position requires a security clearance).

Accordingly, it is ORDERED:

Given the short time in which to submit objections, the clerk shall send a copy of this Report and Recommendation to plaintiff at her address of record <u>and</u> the following address: 2408 Rue St. Honore, Gretna, Louisiana, 70056.

And it is respectfully RECOMMENDED:

1. That defendant's motion to dismiss (doc. 19) be GRANTED.

2. That this cause be DISMISSED with prejudice for lack of subject matter jurisdiction.

3. That the clerk be directed to close the file.

At Pensacola, Florida this 11th day of April, 2008.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] In *Skees*, the plaintiff was dismissed from his employment with the Navy after his security clearance was revoked. He contended that his dismissal was improper because a security clearance was not needed for his position. In concluding that the Merit Systems Protection Board did not have the authority to review the Navy's decision, the court explained:

> Skees accepts *Egan* as prohibiting the Board from reviewing the Navy's revocation of his security clearance. He does not dispute that he knew his job was contingent on retaining his clearance. Rather, he contests the Navy's classification of his position as one requiring a security clearance in the first place. By this argument he seeks to do indirectly what he cannot do directly. He is still asking what was forbidden by *Egan*: that an outside nonexpert body second-guess the Navy's judgment on protection of classified information in its charge. But this argument was subsumed in *Egan*. If the Board cannot review the employee's loss of security clearance, it is even further beyond question that it cannot review the Navy's judgment that the position itself requires the clearance.

*Skees*, 864 F.2d at 1578.

## **NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**